USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 12/6/2024

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

UNITED STATES OF AMERICA,

- against -

ERAN HIYA,

            Defendant.

24 Cr. 282 (VM)

**DECISION AND ORDER**

**VICTOR MARRERO, United States District Judge.**

    Defendant Eran Hiya ("Hiya") moves under Federal Rule of Criminal Procedure 41(g) ("Rule 41(g)") for an order returning property seized from him pursuant to a search warrant at the time of his arrest in Malaysia. The Court referred Hiya's motion to Magistrate Judge Sarah Netburn for a report and recommendation ("the Report"). (Dkt. No. 25.) On September 24, 2024, Judge Netburn recommended a finding that the search warrant is supported by probable cause and that the Government's delay in seeking a search warrant once the property was in U.S. Custody was not unreasonable. (Dkt. No. 31.) Judge Netburn reserved the question whether the U.S. law enforcement cooperation with the Malaysian officials implicates constitutional restrictions and requested that the Court remand this matter to Magistrate Court if the Report is adopted.

1

For the reasons set forth below, the Court adopts the recommendations of the Report in their entirety and remands the matter to Magistrate Judge Netburn for further consideration as to whether the Malaysian authorities were properly acting as agents for U.S. officials in connection with Hiya's arrest, and whether an evidentiary hearing to resolve that issue is warranted.

## I.   BACKGROUND

Hiya claims that on April 4, 2024, Malaysian law enforcement officials detained him in Johor, Malaysia. (Dkt. 19 at 1.) At the time of his arrest, Malaysian police seized five electronic devices – four iPhones and an Apple Macbook Air (the "Devices") - that were in Hiya's hotel room. (Id.) Hiya alleges that the Malaysian authorities provided no explanation for his arrest or seizure of his devices and did not produce a judicial order for his arrest. (Id.)

On April 11, 2024, while Hiya was detained in Malaysia, a magistrate judge for the Southern District of New York signed an arrest warrant for Hiya based on a probable cause complaint. The charges included two counts of unlawful application for and attempted procurement of U.S. citizenship, 18 U.S.C. § 1425(b) and § 3238, and one count of passport fraud, 18 U.S.C. § 1542 and § 3238. On May 6, 2024,

2

a grand jury in the Southern District of New York indicted Hiya, charging him with one count of conspiracy to unlawfully apply for and attempt to procure U.S. citizenship, 18 U.S.C. § 371, and one count of unlawfully applying for and attempting to procure U.S. citizenship. 18 U.S.C. § 1425. (Dkt. No. 2.)

Approximately one week later, FBI agents took custody of Hiya and brought him to the United States to face these charges. (Dkt. No. 19 at 1.) Hiya's property, including the Devices, was turned over to the FBI and retained by the Government pending a resolution of the charges. (Id.) Hiya was arraigned on May 14, 2024, in the Southern District of New York. (Dkt. No. 5.) At a hearing on May 20, 2024, the presiding magistrate judge denied Hiya's motion for the return of the Devices pursuant to Rule 41(g) for lack of jurisdiction. (See Dkt. No. 11.) On May 29, 2024, Magistrate Judge Ona T. Wang authorized a warrant for the search of the Devices. (Dkt. No. 19 at 2.)

On July 3, 2024, Hiya filed a motion pursuant to Rule 41(g) (the "Motion") seeking the return by the United States of America (the "Government") of certain seized property – namely, three of the five electronic devices at issue here.[1] Hiya claimed that (1) the search warrant lacks probable

---

[1] Since filing this motion, the Government returned to Hiya one of the iPhones and the MacBook Pro. Report at 2.

3

cause; (2) the government's delay in executing the search warrant was unreasonable, and (3) the seizure of the Devices by Malaysian authorities violated Hiya's rights under the Fourth Amendment of the U.S. Constitution. (Dkt. No. 19.) The Court referred Hiya's Motion to Magistrate Judge Netburn for a report and recommendation. While the Motion was pending, Hiya filed an additional motion for an order staying the execution of the search warrant pending resolution of his Rule 41(g) motion. (Dkt. No. 28.)

Magistrate Judge Netburn issued the Report on September 24, 2024, recommending that this Court find that (1) the search warrant was supported by probable cause; (2) the delay in executing the search warrant was reasonable; and (3) the Court should deny the motion to stay the execution of the search warrant. Dkt. No. 31 [hereinafter "Report"].) Magistrate Judge Netburn reserved for a potential evidentiary hearing the question of whether the Fourth Amendment constitutional protections applied here to the initial seizure.

Now before this Court are Hiya's Objections to the Report. (Dkt. No. 33 [herein the "Objections"].)

## II.  LEGAL STANDARD

Rule 59(b)(3) of the Federal Rules of Criminal Procedure requires this Court to "consider de novo any objection to the magistrate judge's recommendation. The district judge may accept, reject, or modify the recommendation, receive further evidence, or resubmit the matter to the magistrate judge with instructions." Fed. R. Crim. P. 59(b)(3). However, a district court need not review the recommendation of a magistrate judge to which no party objects. See Thomas v. Arn, 474 U.S. 140, 149-150 (1985).

While the standard of review of a report and recommendation is de novo, a court reviewing a judge's finding of probable cause "must accord considerable deference to the probable cause determination." Walczyk v. Rio, 496 F.3d 139, 157 (2d Cir. 2007); see also Illinois v. Gates, 462 U.S. 213, 236 (1983) ("[W]e have repeatedly said that after-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of de novo review. A magistrate's determination of probable cause should be paid great deference by reviewing courts.") This Court's task is "simply to ensure that the totality of the circumstances afforded the [issuing judge] a 'substantial basis' for making the requisite probable cause determination." United States v. Thomas, 788 F.3d 345, 350 (2d. Cir. 2015).

A. Rule 41

"A person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return." Fed. R. Crim. P. 41(g). To prevail on a Rule 41(g) motion, a movant must show that "(1) he is entitled to lawful possession of the seized property; (2) the property is not contraband; and (3) either the seizure was illegal or the government's need for the property as evidence has ended." Ferreira v. United States, 354 F. Supp. 2d 406, 409 (S.D.N.Y. 2005). Here, the first and second prong are not in dispute. The resolution of the instant motion turns on the third prong: whether the Government's search and seizure of Hiya's property violated the Fourth Amendment.

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. Amend. IV. "In determining whether probable cause exists to support the issuance of a warrant, a judge must make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, there is a fair probability that contraband or evidence of a crime will be found in a particular place." United States v. Boles, 914 F.3d 95, 102 (2d Cir. 2019); United States v. Singh, 390 F.3d 168, 182 (2d Cir. 2004) ("A judge's probable cause

6

determination is made on the basis of 'common sense and experience.'"). This decision "must be grounded in sufficient facts to establish the sort of 'fair probability' on which 'reasonable and prudent men, not technicians, act.'" United States v. Lauria, 70 F.4th 106, 128 (2d Cir. 2023).

### III. DISCUSSION

Hiya makes several objections to the Report: (1) that there was no probable cause for executing the search warrant, (2) that the Government's delay in seeking a warrant to search the devices was unreasonable and (3) that the Court should stay execution of the search warrant while the instant motion is pending. The Court is not persuaded that these objections have merit.

A. Probable Cause for Executing the Search Warrant

Hiya objects to the Report's conclusion that Special Agent Jennifer Lewis's Affidavit in Support of an Application to Search the Devices (the "Lewis Affidavit" or the "Affidavit") was sufficient to find probable cause to execute a search warrant. Specifically, Hiya challenges three of the Report's bases for upholding the search warrant: that (1) the Lewis Affidavit's description of an email sent by Hiya that included alleged false statements was enough to support a finding of probable cause that the Devices would contain the relevant email account; (2) the Lewis Affidavit provided

7

probable cause that the Devices contained communications with counsel or co-conspirators regarding the false information used to unlawfully apply for U.S. citizenship; and (3) the Report's partial reliance on Special Agent Lewis's training and experience as a factor supporting probable cause. (See Objections at 4-5.)

First, Hiya argues that the Lewis Affidavit's reference to an email sent by Hiya that included alleged false statements and falsified documents was not sufficient to find probable cause that the email account from which the email was sent could be found on one of the Devices. (Objections at 4.) According to Hiya, the Lewis Affidavit does not contain any specific factual assertions that link the email account to any of the specific devices and even if it did, that would not provide a basis to search the "entirety of the Devices" outside of the email account. (Id.)

The Lewis Affidavit states that Hiya sent at least one email containing false statements to the U.S. State Department. It is not unreasonable for the issuing judge to infer that this email was sent from one of the Devices seized. Before authorizing seizure of a particular device, Courts have rejected a requirement of proof that the defendant used that device in furtherance of criminal conduct. See United States v. Watson, No. 23 Cr. 82, 2023 WL 7300618, at *6

8

(E.D.N.Y. Nov. 6, 2023) ("That Agent Williams may not have specifically known whether [the defendant] used multiple cell phones or devices in furtherance of that conduct . . . does not obviate a finding of probable cause as to each Device seized."); United States v. Arias-Casilla, No. 21 Cr. 218, 2022 WL 2467781, at *4 (S.D.N.Y. July 6, 2022) (finding probable cause to seize multiple cell phones based on the agent's belief that defendant used at least one cell phone to communicate with a co-conspirator). The Court agrees that it is "reasonable to believe that [the] email was sent on one of the Devices (which all had email capability) and/or that the attachments were stored on the Devices," all of which were found in and seized from Hiya's hotel room in Malaysia. See Report at 6.

Moreover, the fact that an email attaching potentially fraudulent documents was likely sent from one of the Devices further suggests that the Devices contain other evidence of criminal conduct beyond the email account, including evidence of a criminal conspiracy. See United States v. Gatto, 313 F. Supp. 3d 551, 559 (S.D.N.Y. 2018) (finding that because the devices were used to send text messages related to the scheme, the issuing judge was entitled to infer that the other forms of evidence such as data, contacts, and call logs may have been stored in the device); see also United States v. Brown,

9

676 F. Supp. 2d 220, 228 (S.D.N.Y. 2009) ("[The] Court is entitled to rely on . . . the commonsense notion that an individual engaged in a conspiracy may have evidence of that conspiracy, including telephone numbers and other contact information, located . . . on communication devices used by the individual.").

Finally, "a Government agent's expert opinion 'is an important factor to be considered by the judge when making a probable cause determination." United States v. Brown, 676 F. Supp. 2d at 228 (quoting United States v. Benevento, 836 F.2d 60, 71 (2d Cir. 1987)). As the Report states, Agent Lewis affirmed that in her experience, "people charged with these offenses tend to store evidence of their unlawful conduct on electronic devices." Report at 6. Contrary to Hiya's objection, the Report did not rely solely on the agent's law enforcement expertise but considered it as one factor, along with other evidence such as the email sent by the Hiya, justifying the warrant application. United States v. Guzman, No. 97 Cr. 786, 1998 WL 61850, at *4 (S.D.N.Y. Feb. 13, 1998) ("Permitting a search warrant based solely on the self-avowed expertise of a law-enforcement agent, without any other factual nexus to the subject property, would be an open invitation to vague warrants authorizing virtually automatic searches of any property. . . .").

Hence, for the reasons stated above, upon de novo review of the issue, the Court agrees with the Report's conclusion that the factual assertions in the Affidavit were sufficient to support a reasonable finding of probable cause to execute a search warrant.

B. <u>The Government's Delay in Seeking a Search Warrant</u>

Hiya next objects to the Report's finding that the Government's delay in seeking a search warrant was reasonable. To determine whether a delay is reasonable, courts must "balance the nature and quality of the intrusion on the individual's Fourth Amendment rights against the government interests alleged to justify the intrusion." <u>United States v. Place</u>, 462 U.S. 6 96, 703 (1983). The Second Circuit has identified four "[g]eneral relevant considerations" to be taken into account when evaluating the reasonableness of any delay in obtaining a warrant to search seized property: (1) the length of the delay; (2) the importance of the seized property to the defendant; (3) whether the defendant has a reduced property interest in the seized property; and (4) the government's justification for the delay. <u>United States v. Smith,</u> 967 F.3d 198, 203 (2d Cr. 2020). The Report concluded the first factor was neutral, the second factor favored the Government, the third factor

11

favored the Government, and the fourth factor favored Hiya. (Report at 9-12.)

Hiya does not raise specific arguments challenging the Report's finding on the first factor, but the Court agrees that this factor does not favor either party. The nine-business day delay was not so "unreasonable" as to violate the Fourth Amendment.

Hiya challenges the Report's determination that the second factor, importance of the seized property to the defendant, weighs in favor of the Government. The Report correctly recognizes that Hiya's continued ability to possess or use the devices due to being detained pending trial "significantly diminishes the importance of their prompt return." United States v. Green, No. 18 Cr. 121, 2021 WL 1877236, at *6 (W.D.N.Y. Feb. 3, 2021); see also United States v. Loera, 333 F. Supp. 3d 172, 186 n.6 (E.D.N.Y. 2018) ("Courts have routinely upheld periods of delay [] between procuring the information and searching it where, as here, law enforcement's retaining the thing to be seized did not interfere with defendant's ability to use it.").

Hiya's argument that his family members and counsel have a continued interest in the Devices is irrelevant. Hiya is detained pending trial and thus does not have a substantial possessory interest in these devices. The Second Circuit has

12

emphasized that the deeply personal nature of the data on such devices is the vital inquiry in assessing the importance of the seized property "to a defendant." Smith, 967 F.3d at 208 (emphasis added). The inquiry is primarily focused on Hiya's privacy interest in his personal information stored on the devices, not on the utility of said devices to particular family members. The Court is not aware of case law holding that a third-party's property interest in the use of seized devices should constitute a basis for this factor favoring the defendant.

Hiya also objects to the Report's conclusion that the third factor, whether the defendant had a reduced property interest in the seized item, weighs in favor of the Government. "The state has a stronger interest in seizures made on the basis of probable cause than in those resting only on reasonable suspicion" and "[a]ll else being equal, the Fourth Amendment will tolerate greater delays after probable-cause seizures." Smith, 967 F.3d at 208. The Report concluded that the existence of probable cause to seize the Devices, along with their potential independent evidentiary value, diminished Hiya's possessory interest in the devices. Report at 11. The Court agrees.

Hiya was subject to an ongoing criminal investigation that involved, in part, emails sent from an email account.

13

The devices were found in Hiya's hotel room in Malaysia and seized when authorities arrested Hiya based on an arrest warrant signed by a magistrate judge in this district. Eventually, a grand jury issued an indictment against Hiya. These facts lead to the conclusion that the Government has a more compelling interest in the seizure based on the strength of the probable cause determination. See United States v. Wells, 2023 WL 2223474, at *10 (S.D.N.Y., Feb. 23, 2023) (noting "strong probable cause existed where the defendant was subject to an ongoing criminal investigation involving text messages and phone calls exchanged in furtherance of illegal conduct").

Thus, upon de novo review of the issues and evidence on the record of this action, the Court concludes that the Government's delay in seeking a search warrant was reasonable. Hiya's objections to the Report are accordingly overruled.

C. Motion to Stay Execution of the Search Warrant Pending Resolution of Rule 41(g) Motion

The Court agrees with the Report that, given the probable cause supporting the search warrant and the overall reasonable delay in executing it, a stay of the warrant's execution is not merited. See Report at 12. In objecting to the Report's recommendation to deny the motion to stay, Hiya

14

cites an out-of-circuit case where a plaintiff filed a pre-indictment motion for return of his seized electronic devices and the Court granted a temporary stay of the search of those devices. Matter of Search of 624 NE 2nd St., McMinnville, OR, No. 17 Misc. 588, 2019 WL 13074679, at *4 (D. Or. July 16, 2019). That case is distinguishable because the motion to stay came before an indictment was issued whereas here, Hiya has been indicted by a federal grand jury, indicating the strength of probable cause in this case. Moreover, the court in Matter of Search of 624 did not provide its reasoning for issuing the stay, making it difficult to derive any significant insight from it. Therefore, Hiya's objection to the Report's recommendation that the stay be denied is overruled.

D. U.S. Law Enforcement Cooperation with Malaysian Officials

The Court agrees with Magistrate Judge Netburn that there are meaningful factual questions as to whether Fourth Amendment constitutional restrictions applied to the Malaysian officials' arrest of Hiya. The Court remands this matter to Magistrate Judge Netburn for further consideration to resolve whether at the time of Hiya's arrest the Malaysian officials were acting as virtual agents of U.S. officials, whether the Government played a consequential role in

15

controlling or directing the conduct of the foreign investigation and Hiya's ensuing arrest, and whether an evidentiary hearing is required to resolve these issues.

## IV. ORDER

For the reasons discussed above, it is hereby

**ORDERED** that, upon de novo review, the Court adopts the Report and Recommendation of Magistrate Judge Sarah Netburn dated September 24, 2024 (the "Report," Dkt. No.31) in its entirety substantially for the reasons stated therein; and it is further

**ORDERED** that the objections of defendant Eran Hiya to the Report (Dkt. No. 33) are OVERRULED; and it is further

**ORDERED** that this matter is remanded to Magistrate Judge Netburn for further consideration as to whether an evidentiary hearing is warranted to address the issues discussed above in Section III.D of this Decision and Order.

**SO ORDERED.**

Dated:   6 December 2024
         New York, New York

_____
                    Victor Marrero
                    U.S.D.J.