USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: _8/21/2025_

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

- against -

ERAN HIYA,

                    Defendant.

24 Cr. 282 (VM)

DECISION AND ORDER

VICTOR MARRERO, United States District Judge.

Defendant Eran Hiya ("Hiya") moves under Federal Rule of Criminal Procedure 41(g) ("Rule 41(g)") for the return of property seized during his arrest in Malaysia pursuant to a search warrant. (See "Rule 41(g) Motion," Dkt. No. 19.)

The Court referred the Rule 41(g) Motion to Chief Magistrate Judge Sarah Netburn for a report and recommendation. The Court adopted Judge Netburn's first report and recommendation in full, which found that that (1) the search warrant was supported by probable cause and (2) the Government's delay in seeking the search warrant after the property entered came into U.S. custody was not constitutionally unreasonable. (See Dkt. No. 37.) The Court subsequently remanded the matter to Judge Netburn for a report and recommendation pertaining to 1) whether, at the time of Hiya's arrest, the RMP officials were acting as virtual agents

of the U.S. Government, and 2) whether an evidentiary hearing is required to resolve that issue.

During those proceedings, Hiya moved to compel disclosure of all communications between the Federal Bureau of Investigations ("FBI") and Malaysian officials (the "Motion to Compel"]. (See Dkt. No. 45.) Separately, Hiya moved for an evidentiary hearing on the Rule 41(g) Motion (the "Motion for Hearing").

On April 21, 2025, Judge Netburn issued an Opinion and Order and Report and Recommendation (the "Order and Report") denying Hiya's Motion to Compel and Motion for Hearing. (See "Order and Report," Dkt. No. 61 at 1.) The Order and Report further recommends finding that (1) the Malaysian authorities did not act as U.S. agents in Hiya's arrest, (2) the seizure of Hiya's property was lawful, and (3) Hiya's Rule 41(g) motion for return of property should be denied. (See id.)

For the reasons set forth below, the Court adopts the recommendations of the Order and Report in their entirety.

## I.  <u>BACKGROUND</u>

The Court assumes the parties' familiarity with the Order and Report, as well as the facts and procedural background detailed therein. (See Order and Report at 2-3.) The Court briefly recounts facts that are relevant.

A. FACTUAL BACKGROUND

On April 4, 2024, the Royal Malaysian Police ("RMP") detained Hiya in Johor, Malaysia. (See Dkt. No. 19 at 1.) At the time of Hiya's arrest, the RMP seized five electronic devices (the "Devices") that were in Hiya's hotel room. (See id.) Hiya alleges that the RMP provided no explanation for his arrest or the seizure of the Devices and did not produce a judicial order for his arrest. (See id.) Hiya claims that the RMP subsequently detained him for several weeks without legal process or meaningful access to counsel. (See id. at 1.)

Documents produced by the Government to Hiya revealed that U.S. law enforcement had been in contact with the RMP regarding Hiya's whereabouts leading up to his arrest. (See Dkt. No. 45-1.) On January 10, 2024, nearly three months before Hiya's arrest, a Malaysia-based FBI agent sent a two-page request to the RMP seeking information about Hiya, including immigration details and any police records related to a prior stabbing incident in Malaysia. (See Dkt No. 45-2.) Roughly a month later, the RMP responded, stating that while it had no official record of Hiya, it was aware he had been in Malaysia from October 25 to December 7, 2023. (See Dkt. No. 45-3.)

Between April 5 and April 10, 2024, officials from the U.S. Attorney's Office for the Southern District of New York

(the "U.S. Attorney's Office") and FBI agents - both domestic and stationed abroad, including in Malaysia - exchanged emails indicating uncertainty about whether Hiya had in fact been arrested in Malaysia on April 4 and, if so, on what charges. (See Dkt. No. 45-4.) The correspondence also indicated that the U.S. Attorney's Office intended to file criminal charges against Hiya and sought additional information about his arrest in Malaysia to support his potential extradition to the United States. (See id.) ████

████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████ (See Dkt. No. 45-7 at 2.)

On April 11, 2024, while Hiya was detained in Malaysia, a magistrate judge for the Southern District of New York signed an arrest warrant for Hiya based on a probable cause complaint. On April 15, 2024, the FBI requested that the RMP transfer custody of Hiya to the FBI to facilitate his deportation to the United States. (See Dkt. No. 45-5.) ███

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

(See Dkt. No. 45-7 at 32.)

On May 6, 2024, a grand jury in the Southern District of New York indicted Hiya, charging him with one count of conspiracy to unlawfully apply for and attempt to procure U.S. citizenship, in violation of 18 U.S.C. § 371, and one count of unlawfully applying for and attempting to procure U.S. citizenship, in violation of 18 U.S.C. § 1425. (<u>See</u> Dkt. No. 2.) On May 13, 2024, the Government took Hiya into custody from the Malaysian authorities and brought him to the United States to face these charges. (<u>See</u> Dkt. No. 9 at 1.) Hiya's property, including the Devices, was turned over to the FBI and retained by the Government pending a resolution of the charges. (<u>See</u> <u>id.</u>)

B. PROCEDURAL BACKGROUND

On July 3, 2024, Hiya filed the Rule 41(g) Motion seeking the return of the Devices. Hiya argued that: (1) the search warrant lacked probable cause, (2) the Government unreasonably delayed executing the warrant, and (3) the seizure of the Devices by Malaysian authorities violated Hiya's Fourth Amendment rights. (<u>See</u> Dkt. No. 19.) This Court referred Hiya's Rule 41(g) Motion for a report and recommendation.

On December 6, 2024, the Court adopted Judge Netburn's first report and recommendation rejecting the first two arguments in Hiya's Rule 41(g) motion and remanded the third

for further consideration. (See Dkt. No. 37.) Specifically, the Court held that the warrant to search the Devices was supported by probable cause and the Government's delay in executing the warrant was not constitutionally unreasonable. (See id.) As to whether Malaysian officials acted as virtual agents of the U.S. government—such that Hiya's arrest and the initial seizure would be subject to constitutional protections—the Court remanded the issue to Judge Netburn to determine whether an evidentiary hearing is required.

During the remand proceedings in Magistrate Court, Hiya moved to compel a broader disclosure of certain communications between the FBI and Malaysian officials pursuant to Rule 16 and for an evidentiary hearing on his Rule 41(g) Motion. (See Dkt. No. 45.) Specifically, Hiya sought all communications from two FBI representatives based in Malaysia who were the FBI's principal points of contact with Malaysian officials: Legal Attaché Khangura ("Khangura") and Assistant Legal Attaché Wu ("Wu", and with Khangura, the "Attachés"). (See id. at 2-3.)

On April 21, 2025, Judge Netburn issued the Order and Recommendation denying Hiya's Motion to Compel and Motion for Hearing. Judge Netburn further recommended that that the Court deny the Rule 41(g) Motion, recommending a finding that Malaysian authorities did not act as virtual agents of U.S.

officials in connection with Hiya's arrest and that the seizure of Hiya's property was lawful. (See Dkt. No. 61.)

Judge Netburn denied the Motion to Compel on the grounds that the Attachés who communicated with the Malaysian authorities were not members of the prosecution team. (See Order and Report at 19.) Judge Netburn denied the Motion for Hearing and recommended denial of the Rule 41(g) Motion on the grounds that Hiya failed to demonstrate that U.S. law enforcement directed or controlled Malaysian law enforcement. Thus, no constitutional protections applied to the RMP's actions. (See Order and report at 11-16.)

Now before this Court are Hiya's Objections to the Order and Report (see "Objections," Dkt. No. 63.)

## II.  STANDARD OF REVIEW

The Court first notes that the standard of review of the Order and Report varies depending on the motion at issue. As explained above, the Order and Report addressed three motions: (1) Hiya's Motion for Hearing, (2) Hiya's Motion to Compel, and (3) Hiya's Rule 41(g) Motion. The parties, in their objections and responses, assume that de novo review under Rule 59(b) applies to the entire Order and Report. (See Objections at 2; Dkt. No. 66 at 4.) That assumption is incorrect. Hiya's Motion for Hearing and Motion to Compel are nondispositive because they do not dispose of a charge or

defense. Rule 59 distinguishes between non-dispositive and dispositive matters referred to a magistrate judge. Rule 59(a) provides that a district judge may refer any nondispositive matter to a magistrate judge for determination. See Fed. R. Crim. P. 59(a). A party may object to the magistrate judge's ruling within 14 days, and the district judge must set aside any portion of the order that is "contrary to law or clearly erroneous." Fed. R. Crim. P. 59(a) (emphasis added). "An order is clearly erroneous where a reviewing court is left with the definite and firm conviction that a mistake has been committed," and an order is "deemed contrary to law if it fails to apply or misapplies relevant statues, case law or rules of procedure." United States v. Torres, 18 Crim. 6094, 2020 WL 4199075, at *1 (W.D.N.Y. July 22, 2020).

By contrast, under Rule 59(b)(1), a district judge may refer a dispositive motion - such as a motion to suppress evidence - for a report and recommendation. In that context, the magistrate judge must conduct the necessary proceedings and enter a recommended disposition, including any proposed findings of fact. Fed. R. Crim. P. 59(b)(1). A party may then file objections within 14 days, after which the district judge must review the challenged portions de novo and may accept, reject, or modify the recommendation, receive further

evidence, or resubmit the matter to the magistrate judge with instructions. Fed. R. Crim. P. 59(b)(2)-(3).

Accordingly, this Court will review Judge Netburn's Order denying Hiya's Motion to Compel and Motion for Hearing under the "contrary to law or clearly erroneous" standard. The Court will review de novo Judge Netburn's Recommendation that the Court deny Hiya's Rule 41(g) Motion.

### III. <u>DISCUSSION</u>

A. <u>MOTION TO COMPEL PRODUCTION</u>

Hiya argues that, in denying the Motion to Compel, the Order and Report improperly disregarded evidence that the Attachés were part of the prosecution team and undermined Hiya's ability to vindicate his claim under <u>United States v. Getto</u>, 729 F.3d 221 (2d Cir. 2013). The Court addresses each argument in turn.

First, Hiya objects to Judge Netburn's denial of the Motion to Compel on the grounds that the Attachés' communications are not subject to disclosure requirements under Rule 16 because the Attachés were not members of the "prosecution team." (<u>See</u> Dkt. No. 63 at 4.) Whether the Attachés were members of the prosecution team, and thus have a duty to disclose, depends on their level of involvement in the investigation and whether they submitted to the

prosecutors' direction. See United States v. Barcelo (Barcelo II), 628 F. App'x 36, 38 (2d Cir. 2015) (summary order).

The Government's obligations to disclose are governed by Rule 16, Brady v. Maryland, 373 U.S. 83 (1963), and Giglio v. United States, 405 U.S. 150 (1972). Under Rule 16, the Government must produce documents that are in its possession and "material to preparing the defense." Fed. R. Crim. P. 16(a)(1)(E). Under Brady, the Government must disclose favorable material evidence to a criminal defendant. See Brady, 373 U.S. at 86. Evidence is favorable if it is exculpatory or, under Giglio, if it could be used to impeach a key government witness. See Giglio, 405 U.S. at 154. The Government's obligations under Brady encompass not only information that is admissible in its present form but also material information that could potentially lead to admissible evidence favorable to the defense. See United States v. Rodriguez, 496 F.3d 221, 226 (2d Cir. 2007).

The Government's duty to disclose extends to evidence "within the government's possession, custody or control." Fed. R. Crim. P. 16(a)(1)(E). The "prosecutor is presumed to have knowledge of all information gathered in connection with his office's investigation of the case" and "has a duty to learn of any favorable evidence known to[] others acting on the government's behalf in the case, including the police."

United States v. Avellino, 136 F.3d 249, 255 (2d Cir. 1998) (internal quotation marks and citations omitted). However, the prosecutor's duty to learn of material or favorable evidence is not limitless and does not encompass materials held by every agency or individual within the federal government. See United States v. Morgan, 302 F.R.D. 300, 303 (S.D.N.Y. 2014). The Second Circuit has held that the Government's constructive knowledge of such evidence only extends to other federal agencies or individuals within those agencies that are considered "an arm of the prosecutor" or "part of the prosecution team." United States v. Meregildo, 920 F. Supp. 2d 434, 440-41 (S.D.N.Y. 2013) (quoting United States v. Gil, 297 F.3d 93, 106 (2d Cir. 2002)).[1]

The determination of whether an agency or individual is part of the prosecution team "depends on the level of interaction between the prosecutor and the agency or individual." Meregildo, 920 F. Supp. 2d at 441. "Individuals who perform investigative duties or make strategic decisions

---

[1] As the Order and Report notes, it remains an open question among district courts in this Circuit whether the scope of "government" under Rule 16 extends beyond the "prosecution team" standard used in the Brady line of cases. (See Order and Report at 5.) Nevertheless, the Order and Report found that district court decisions suggest that the "prosecution team" analysis is useful in assessing the Government's "possession, custody, or control" under Rule 16. Hence, the Order and Report applied the "prosecution team" analysis. (See id.) Neither party objects to this framework and the Court will consider the "prosecution team" standard in determining whether evidence is in the possession, custody or control of the Government under Rule 16.

about the prosecution of the case are considered members of the prosecution team, as are police officers and federal agents who submit to the direction of the prosecutor and participate in the investigation." Barcelo II, 628 F. App'x at 38. Moreover, the prosecution team "may include individuals who are not strategic decision-makers [when those individuals] submit to the direction of the prosecutor and aid in the Government's investigation." Meregildo, 920 F. Supp. 2d at 441 (citations omitted).

It is clear, however, that "the prosecution team does not include federal agents, prosecutors, or parole officers who are not involved in the investigation. And, even when agents are involved in the investigation, they are not always so integral to the prosecution team that imputation is proper." Id. (citing United States v. Stewart, 323 F. Supp. 2d 606, 616-18 (S.D.N.Y. 2004)) (Secret Service lab forensic expert was not a member of the prosecution team despite providing trial support and testifying as an expert for the prosecution).

In his objections, Hiya argues that because an FBI special agent copied the line prosecutor on certain emails purporting to direct the activities of Wu and Khangura, the Attachés must necessarily be considered members of the prosecution team. (See Objections at 4.) That the prosecutor

was copied on certain emails to Wu and Khangura does not indicate that the Attachés were "so integral to the prosecution team that imputation is proper." Meregildo, 920 F. Supp. 2d at 441. In the email Hiya cites, an FBI agent on the prosecution team asked Wu to obtain the Malaysian authorities' position on Hiya's deportation or extradition. (See Dkt. No. 56 at 2.) As the Order and Report recognized, "asking a foreign-based FBI agent to send inquiries to officials of the host country does not make him an 'arm of the prosecution.'" (See Order & Report at 7.) Hiya offers no additional arguments or authority as to why this reasoning was otherwise erroneous or contrary to law.

Rather, the evidence shows that the prosecution team's correspondence with Wu and Khangura was for "the sole purpose of seeking helpful information" related to the logistics of Hiya's extradition, which is insufficient to show Wu and Khangura were part of the prosecution team. U.S. v. Morgan, 302 F.R.D. 300, 305 (S.D.N.Y. 2014). Wu and Khangura's activities did not otherwise "encompass the case work leading up to charging [Hiya] and the piecing together of evidence to be presented at trial." Id. As such, the Court agrees with the Order and Report's finding that Wu and Khangura were not members of the "prosecution team" for purposes of both Rule 16 and Brady.

Hiya contends that denying his Motion to Compel on the grounds that the Attachés were not members of the prosecution team would effectively bar Hiya's ability to make a showing that his constitutional rights were violated under Getto. (See Objections at 5.) In Getto, the Second Circuit reaffirmed the rule that constitutional protections will attach to foreign authorities' enforcement activities where (1) the foreign authorities act as virtual agents of the United States or (2) "the cooperation between the United States and foreign law enforcement agencies is designed to evade constitutional requirements applicable to American officials." Getto, 729 F.3d at 240. Hiya maintains that vindicating this right depends on his ability to access the Attachés' communications, which Hiya claims will demonstrate the agency relationship between U.S. law enforcement and foreign officials or the intentional circumvention of constitutional safeguards.

The flaw in Hiya's argument is that he fails to establish a sufficient basis to compel disclosure of the requested correspondence. As the Order and Report notes, the Government's discovery obligations in a criminal prosecution are governed by Brady, Rule 16, and Giglio. The Court has determined that, because the communications are not within the Government's "possession, custody, or control," they fall

outside Rule 16's and <u>Brady</u>'s scope. Absent another affirmative disclosure obligation, Hiya must make a showing that the Government is deliberately circumventing constitutional safeguards. As discussed further below, Hiya offers no such showing that Malaysian officials were acting as virtual agents of the United States. Hiya cannot expand the Government's disclosure obligations merely by asserting that, without the requested materials, he cannot prove a constitutional violation without first making a threshold showing that such a violation has in fact occurred. Holding otherwise would impermissibly broaden the Government's disclosure obligations in criminal actions.

For these reasons, Hiya's objection to the Order and Report's denial of his motion to compel production of additional documents is **OVERRULED**.

1. <u>Hiya's Motion for a Rule 17(c) Subpoena</u>

Hiya alternatively argues that even if the Court agrees with the Order and Report's Rule 16 analysis, the Court should grant Hiya leave to issue a Rule 17(c) subpoena to obtain Khangura and Wu's relevant correspondence directly from the FBI. (<u>See</u> Objections at 5.)

A Rule 17(c) subpoena "may order the witness to produce designated 'books, papers, documents, data, or other documents so long as they are 'evidentiary.'" <u>United States</u>

15

v. Bergstein, 16 Crim. 746, 2017 WL 6887596, at *4 (S.D.N.Y. Dec. 28, 2017) (citing Browman Dairy Co. v. United States, 341 U.S. 214, 219 (1951)). Rule 17(c) operates to "expedite the trial by providing a time and place before trial for the inspection of subpoenaed materials," rather than "provide a means of discovery for criminal cases." United States v. Nixon, 418 U.S. 683, 698-99 (1974) (citation omitted). Relevant here, "Rule 17(c) was not intended to undermine the limited right of discovery under Rule 16 by providing 'a right of discovery in the broadest terms.'" Bergstein, 2017 WL 6887596, at *4 (citing Bowman Dairy Co., 341 U.S. at 220)).

Consistent with this limited purpose, the Supreme Court has articulated four requirements that a party seeking compliance with a Rule 17(c) subpoena must show:

> (1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general 'fishing expedition.'

Nixon, 418 U.S. at 699-700. "A court may quash a motion for a Rule 17(c) subpoena based on a failure to satisfy one of these prongs." Bergstein, 2017 6887596, at *4 (citing United States v. Conway, 615 Fed. Appx. 46, 48-49 (2d Cir. 2015)).

16

It is Hiya's burden to establish that the "materials requested are relevant, specifically identified" and "admissible." United States v. Nix, 251 F. Supp. 3d 555, 565 (W.D.N.Y. 2017). In support of his motion for a Rule 17(c) subpoena, Hiya merely argues that the requested correspondence "plainly meets the requirements" of Nixon. (See Objections at 6.) Hiya does not address how this correspondence has any evidentiary value to the passport and conspiracy charges in the instant indictment. See United States v. Tucker, 249 F.R.D. 58, 62 (S.D.N.Y. 2008). Moreover, considering that this action is not yet scheduled for trial, Hiya fails to make any arguments as to why or how the requested correspondence would otherwise "expedite [his] trial." Bowman Dairy Co., 341 U.S. at 220; see also United States v. Louis, No. 04 Crim. 203, 2005 WL 180885, at *3 (S.D.N.Y. Jan. 27, 2005) (purpose of Rule 17(c) subpoena is "trial-focused").

Hiya has failed to meet his burden as to why the Court should so-order a Rule 17 Subpoena for the requested correspondence. Accordingly, Hiya's request for a Rule 17(c) subpoena is **DENIED**.

B. MOTION FOR EVIDENTIARY HEARING

Hiya argues that the Order and Report erred in denying Hiya's request for an evidentiary hearing because the Order and Report failed to consider evidence that Hiya was re-arrested on or about April 18, 2024, by the RPM at the direction and control of U.S. law enforcement. Hiya contends that the "re-arrest" is subject to constitutional protections, such that the seizure of devices during his initial arrest violated the Fourth Amendment. (See Objections at 6.)

Evidentiary hearings "are not granted as a matter of course" and "general and conclusory assertions will not suffice" to warrant an evidentiary hearing." Sanchez-Butriago v. United States, No. 00 Civ. 8820, 2003 WL 21649431, at *6 (S.D.N.Y. July 14, 2003). An evidentiary hearing "is required if the moving papers are sufficiently definite, specific, detailed and nonconjectural to enable the court to conclude that contested issues of fact going to the validity of the search are in question." In re Terrorist Bombings of U.S. Embassies in East Africa, 552 F.3d 157, 165 (2d Cir. 2008).

Hiya contends that the Order and Report failed to consider his affidavit, submitted in his Malaysian habeas proceeding, which he claims supports his theory that U.S. officials directed Malaysian authorities to re-arrest him on April 18, 2024. (See Dkt. No. 63 at 6.) Hiya's affidavit

attests that on April 18, 2024, RMP officials notified Hiya that he was being released, but abruptly changed course and informed him that he was being re-arrested in connection with investigations related to organized crime activity. (See Dkt. No. 45-6 at ¶¶ 4-6.)  The Order and Report concluded that there was no evidence to support Hiya's argument regarding the "re-arrest," but it only considered certain communications between FBI agents suggesting they intended to ask Malaysian authorities to detain Hiya until a U.S. arrest warrant could be obtained. (See Order & Report at 15-16.) The Order and Report did not consider Hiya's affidavit. Hiya argues that the FBI agents' discussions regarding their desire for Malaysia to hold Hiya in conjunction with Hiya's affidavit regarding his April 18 "re-arrest" sufficiently shows a contested issue of fact as to whether U.S. officials directed the re-arrest. The Court disagrees. (See Objections at 6-7.)

As an initial matter, the FBI correspondence cited by Hiya, standing alone, does not support the claim that U.S. officials directed his purported "re-arrest." ███████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████ (See Dkt. No. 45-

7 at 4.) Also on April 11, FBI officials noted that Malaysia might be willing to extend Hiya's detention slightly if an arrest warrant could be obtained. (See Dkt. No. 45-4 at 4.) At this point, none of this correspondence shows that U.S. officials directed RMP's decision-making. Rather, the emails reflect a routine exchange of information and an effort to coordinate lawful extradition procedures. See Getto, 729 F.3d 221 at 231 ("[r]obust information-sharing and cooperation across investigations" does not transform foreign law enforcement into agents of the United States where American officials "did not participate in *any* law enforcement actions by [the RMP in Malaysia]".)

Second, Hiya's affidavit does not create an issue of fact sufficient to warrant an evidentiary hearing. The affidavit does not contradict any of the evidence or the Government's proffers regarding Hiya's detention in Malaysia and his subsequent extradition to the United States. To the contrary, when read alongside the contemporaneous correspondence, the affidavit establishes only that ███████

███████████████████████████████████████████

following his initial arrest in order to facilitate extradition once a U.S. arrest warrant had been obtained. Such a warrant was obtained when, on April 11, 2025, Judge Netburn signed a criminal complaint charging Hiya with

unlawful application for and attempted procurement of U.S. citizenship and passport fraud. At most, the evidence, even considering Hiya's affidavit, merely shows a request to hold Hiya for extradition based on a valid U.S. arrest warrant. United States v. Gasperini, 894 F.3d 428, 489 (2d Cir. 2018) ("[a] mere request [by United States officials] is not sufficient to show control.")

For these reasons, Hiya's objections to the denial of his Motion for Hearing are **OVERRULED**.

C. RULE 41(G) MOTION

"A person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return." Fed. R. Crim. P. 41(g). To prevail on a Rule 41(g) motion, a movant must show that "(1) he is entitled to lawful possession of the seized property; (2) the property is not contraband; and (3) either the seizure was illegal or the government's need for the property as evidence has ended." Ferreira v. United States, 354 F. Supp. 2d 406, 409 (S.D.N.Y. 2005) (internal quotation marks and citation omitted). The first and second prong are not in dispute. The resolution of the instant motion turns on the third prong, that is whether the Government's search and seizure of Mr. Hiya's property was illegal - i.e., a violation of the Fourth Amendment.

As an initial matter, Hiya does not object to the Order and Report's conclusion that the Malaysian authorities were not acting as virtual agents of the United States when they arrested Hiya and seized his devices on April 4, 2024.

But even if Hiya did object, the Court agrees with the Order and Report's conclusion that Malaysian authorities were not virtual agents of the United States. To "render foreign law enforcement officials virtual agents of the United States, American officials must play some role in controlling or directing the conduct of the foreign parallel investigation." Getto, 729 F.3d at 230 (citing Lee, 723 F.3d at 140). As the Order and Report explains, the evidence shows that the United States did not direct Malaysian law enforcement to initiate any investigation that led to Hiya's arrest. Indeed, correspondence reflects that U.S. officials were uncertain whether Hiya had even been arrested on April 4, 2025, and if so, on what charges, further supporting the conclusion that the arrest was not directed by the United States. (See Order & Report at 14; Dkt. Nos. 42-2 at 6, 9-10).

With respect to Hiya's purported "re-arrest," the existing record reflects lawful coordination between sovereigns – not U.S. control. A foreign government is not a U.S. agent when the United States requests that the foreign

22

government hold an individual for extradition based on a valid
judicial warrant and that individual was not initially
arrested at U.S. officials' direction.[2] See United States v.
Chang, No. 18 Crim. 681, 2024 WL 1308775, at *3 (E.D.N.Y.
Mar. 27, 2024) (DOJ request for provisional arrest of
defendant in connection with extradition to the United States
was not sufficient to show control.)

Courts "have long allowed foreign authorities to share
the fruits of an investigation with their American
counterparts without suggesting or assuming the latter
controlled the investigation." Getto, 729 F.3d at 231. The
evidence shows that Malaysian law enforcement officials "did
not solicit the views, much less approval, of" U.S. government
officials regarding Hiya's alleged "re-arrest," nor does the
evidence show any request by U.S. officials that Malaysian
law enforcement "re-arrest" Hiya on new charges. U.S. v. Lee,
723 F.3d 134, 141 (2d Cir. 2013).

For these reasons, the Court adopts the Order and
Report's recommendation that Malaysian authorities did not
act as virtual agents of U.S. officials in connection with

[2] ████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████

Hiya's arrest. Accordingly, Hiya's Rule 41(g) Motion is **DENIED**.

## IV.  <u>ORDER</u>

For the reasons discussed above, it is hereby

**ORDERED** that the Court adopts the Opinion & Order and Report and Recommendation of Chief Magistrate Judge Sarah Netburn dated April 21, 2025 (the "Order and Report", Dkt. No. 61) in its entirety substantially for the reasons stated therein; it is further

**ORDERED** that the objections (Dkt. No. 63) of defendant Eran Hiya ("Hiya") to the Order and Report are **OVERRULED**; it is further

**ORDERED** that Hiya's renewed Motion to Compel (Dkt. No. 45) is **DENIED**; and it is further

**ORDERED** that Hiya's motion for leave to issue a Rule 17(c) Subpoena (Dkt. No. 63) is **DENIED**.

The Clerk of Court is respectfully directed to terminate the motion at Dkt. No. 19.


**SO ORDERED.**

Dated:      21 August 2025
            New York, New York

_____
              Victor Marrero
              U.S.D.J.

—